IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION


No. 5:12-CV-696-D


HILDA ROSE BARNES,           )
                                 )
     Plaintiff,            )
                                 )
v.                                )
                                 )      **MEMORANDUM &**
                                 )      **RECOMMENDATION**
CAROLYN W. COLVIN,[1]      )
Acting Commissioner of Social    )
Security,                     )
                                 )
      Defendant.        )
_____  )


     This matter is before the Court upon the parties' Motions for Judgment on the Pleadings.

DE's-17 & 19.[2]  The time for filing any responses or replies has expired, and, therefore, the

motions are now ripe for adjudication.  Pursuant to 28 U.S.C. § 636(b)(1), they have been

referred to the undersigned for the entry of a Memorandum and Recommendation. DE-21.

     For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment

on the Pleadings (DE-17) be DENIED, and that Defendant's Motion for Judgment on the

Pleadings (DE-19) be GRANTED.

---

    [1]  Acting Commissioner Colvin has been substituted for former Commissioner Astrue, pursuant to FED. R. CIV.
P. 25(d)(1).  Plaintiff also names as Defendants Attorney General Eric Holder, Thomas Walker, United States
Attorney for the Eastern District of North Carolina, and "Office of Program Law."  The Commissioner of Social
Security is the only proper defendant in a case seeking review of denial of benefits pursuant to 42 U.S.C. § 405(g).
20 C.F.R. 422.210(d); *see Kelley v. Astrue*, No. 4:11-cv-76, 2011 WL 6934562, at n.1 (E.D.N.C. Dec. 30, 2011)
(citing *Keesing v. Apfel*, 124 F. Supp. 2d 134, 135 (N.D.N.Y. 2000)).  Accordingly, the undersigned
RECOMMENDS that any claims against Defendants other than the Commissioner be dismissed. *Id.*

    [2]  Plaintiff is *pro se*; her "Motion for Benefits" has been construed as a Motion for Judgment on the Pleadings.

## STATEMENT OF THE CASE

Plaintiff filed an application for disability insurance benefits and protectively filed an application for supplemental security income on May 17, 2010, alleging disability beginning January 30, 2001. Tr. 22, 33. Her claim was denied initially and upon reconsideration. Tr. 85, 96. Plaintiff waived her right to personally appear at a hearing. Tr. 129. As such, on February 24, 2011, an Administrative Law Judge ("ALJ") issued a decision pursuant to 20 C.F.R. § 404.929 *et seq.*, and determined that Plaintiff was not disabled. *Id.* at 9-16. The Social Security Administration's Office of Disability Adjudication and Review denied Plaintiff's request for review on August 23, 2012, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1. Plaintiff filed the instant action on October 19, 2012. DE-1.

## ANALYSIS

**I.     This Court is Without Jurisdiction to Consider Any Claims Other Than Judicial Review of the February 24, 2011 ALJ Decision.**

This Court must liberally construe *pro se* pleadings in order to allow for development of potentially meritorious claims. *Miller v. Barnhart*, 64 F. App'x 858 (4th Cir. 2003); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not ... without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985). This Court may not act as the litigant's advocate and "conjure up questions never squarely presented" to the Court. *Id.*; *accord Weller v. Dep't of Soc. Serv.*, 901 F.2d 387, 391 (4th Cir. 1990).

Applying this liberal construction to Plaintiff's complaint, it is apparent that in addition to her central request for review of the 2011 ALJ decision denying her claim, she seeks "court review of [her] discrimination complaint," and a finding that her "October 6, 2006 application

2

[is] still effective," which the undersigned construes as an attempt to appeal the dismissal of her prior claim for failure to timely request a hearing. *See* DE-1 at 2. Defendant briefly states in its answer that it has construed Plaintiff's complaint as alleging only a request for review for her denial of benefits, and has thus wholly ignored Plaintiff's claims other than her appeal of the 2011 ALJ decision. *See* DE-6. Nonetheless, the undersigned must raise *sua sponte* the issue of whether this Court has jurisdiction to consider Plaintiff's additional claims. *Wright v. N.C. Dep't of Health and Human Svcs.*, 405 F. Supp. 2d 631, 634 (E.D.N.C. 2005) (citing *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998)).

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review only a "final decision of the Commissioner of Social Security made after a hearing."[3] This review is limited to whether Defendant's February 24, 2011 finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court is therefore without jurisdiction to review any other "findings of fact or decision[s]" of the Commissioner. 42 U.S.C. § 405(h). Moreover, "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought" under other federal statutes conferring jurisdiction where the claim "aris[es] under" the Social Security Act. 42 U.S.C. § 405(h). Accordingly, Section 405(g) "is the sole avenue for judicial review of all 'claim[s] arising under' " the Social Security Act. *Heckler v. Ringer*, 466 U.S. 602, 615 (1984).

The phrase "claim arising under" is construed broadly and "include[s] any claims in which 'both the standing and the substantive basis for the presentation' of the claims is the Social

---

[3] In this case, Plaintiff waived an oral hearing and the ALJ decided the case on the evidence before him. Tr. 129, *see also* 20 C.F.R. § 404.948(b). The Appeals Council's denial of a claimant's request for review of an ALJ decision made solely upon documentary evidence after waiver of a hearing constitutes a "final decision…made after a hearing" even though no oral hearing was held. *See Michaels v. Colvin*, No. 12-1181, 2013 WL 2353977, at *6 (W.D. Pa. May 29, 2013).

3

Security Act." *Id.* (quoting *Weinberger v. Salfi*, 422 U.S.749, 760–61 (1975)). Therefore, "[w]hen a plaintiff claims "a monetary benefit from the agency [such as] a disability payment, or payment for some medical procedure," *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 11 (2000), "it is fruitless" to argue that a claim seeking to recover benefits does not arise under the Social Security Act. *Weinberger*, 422 U.S. at 761. Here, the sole relief Plaintiff seeks is social security benefits, and all of the arguments she has put forward pertain to the administrative process that led to the denial of her claim. Accordingly, her additional claims "arise under" the Social Security Act, and—as discussed in more detail below—this Court has no jurisdiction to consider them.

### A. Plaintiff's Request For a Finding That Her October 2006 Claim Be "Still Effective" Is Outside this Court's Jurisdiction.

To place into context Plaintiff's request for intervention in her October 2006 claim, some procedural background is necessary.[4] Plaintiff's October 2006 claim for benefits was denied initially, and upon reconsideration on March 12, 2007. Tr. 319. Plaintiff filed a request for a hearing on July 12, 2007, but her request was untimely. Tr. 20; *see* 20 C.F.R. §§ 404.933(b)(1) & 404.901 (request must be filed within 60 days after receiving notice of unfavorable determination, which is presumed to be 5 days after the date of mailing). In response, the SSA scheduled a "show cause" hearing on June 12, 2009, at which Plaintiff was to appear and explain her reasons for not filing within the required time period. DE-1-1 at 20. Plaintiff did not appear at the show cause hearing, and on June 22, 2009, an ALJ issued an order dismissing her request

---

[4] Some materials outside Plaintiff's Complaint are considered for context; the Court is permitted to examine materials beyond the pleadings when resolving a jurisdictional dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Plaintiff has also attached certain documents to her pleading and thereby "explicitly relied" on them, such that they may be considered. *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). These materials were considered for purposes of deciphering Plaintiff's Complaint and determining this Court's jurisdiction, and were not considered for the purpose of reviewing the Commissioner's final 2011 determination denying benefits. *See Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996) (court may not consider evidence not before Commissioner in reviewing an ALJ's decision).

for a hearing, and finding that the March 12, 2007 denial of Plaintiff's claim was final. DE-1-1 at 20-21; *see also* 20 C.F.R. § 404.957 (allowing dismissal of untimely hearing request). This decision, along with a notice of dismissal, including information regarding the appeals process, was mailed to Plaintiff's home address on June 22, 2009.[5] *Id.* at 17-18. The notice states that the Appeals Council "will dismiss a late request [for review of the ALJ's decision] unless you had a good reason for not filing it on time." *See id.* at 17.

Plaintiff was incarcerated from at some point in 2007 through early 2010. *See* Tr. 249-286. When she was released from the Department of Corrections, Plaintiff sent the SSA a State of NC Release Form explaining her absence at the June 12, 2009 hearing. *See* DE-1-1 at 16. The Office of Disability Adjudication and Review informed Plaintiff on March 18, 2010 that she was "past the due date to appeal the dismissal" and that "in order to get a new hearing, you must file a new claim with your local security office." *Id.* As such, Plaintiff filed the present claim for benefits, including a request that this court find the "October 6, 2006 application as still effective." DE-1 at 2.

Plaintiff's request, however, is without avail. The denial of Plaintiff's October 6, 2006 application is binding, because an ALJ dismissed her request for a hearing on the March 12, 2007 denial of her claim (upon reconsideration), and her attempt to appeal that dismissal was denied as untimely. 20 C.F.R. §§ 404.959 & 404.921. Filing a new claim did not preserve Plaintiff's prior claim for benefits; rather, the prior dismissal meant that she is not entitled to benefits for that time period. *See generally* KUBITSCHEK & DUBIN, SOCIAL SECURITY LAW & PROCEDURE IN FEDERAL COURT § 1:11 (2013 ed.) (discussing effects of prior binding decision, including loss of benefits from prior time period). Accordingly, Plaintiff's request for the Court

---

[5] This notice included language stating that if the Appeals Council did not review and vacate that order, "the action upon which you requested a hearing cannot be changed except under special rules." DE-1-1 at 18.

to find her 2006 application as "still effective" will be construed as an appeal of the SSA's decision that her request for review of the ALJ's dismissal of her claim was "past the due date." DE-1-1 at 16. For the reasons discussed below, this Court does not have the authority to alter the SSA's conclusion that her appeal was untimely.[6]

As an initial matter, a claimant must seek judicial review of within 60 days of an adverse decision. 42 U.S.C. § 405(g). This sixty-day limit must be strictly construed, *Bowen v. City of N.Y.*, 476 U.S. 467, 479 (1986), but in some "rare" circumstances, a court may equitably toll the limitations period. *Id.* at 481. The Fourth Circuit has cautioned that equitable tolling "will rarely be appropriate." *Hyatt v. Heckler*, 807 F.2d 376, 378 (4th Cir. 1986). Because, as discussed below, other considerations divest this Court of jurisdiction to consider Plaintiff's request, it is assumed—without deciding—that tolling would be appropriate where, as here, the cause of Plaintiff's confusion in not appealing a prior determination was the language used by the SSA and Plaintiff timely attempted to vindicate those rights by, as she was instructed, simply filing a new claim. *See Carter v. Astrue*, No. 7:11-cv-121, 2012 WL 5949763, at *3 (E.D.N.C. Nov. 6, 2012) (quoting *Cardyn v. Comm'r of Social Security*, 66 F. App'x 394, 397 (3d Cir. 2003)) (equitable tolling may be warranted "where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action," or "where the plaintiff has timely asserted . . . her rights mistakenly in the wrong forum").

As discussed above, this Court has jurisdiction to review only a "final decision of the Commissioner of Social Security made after a hearing." 42 U.S.C. 405(g); *see Mathews v.*

---

[6] This Court would likewise be without jurisdiction to consider Plaintiff's claim if it were construed as a request to re-open her prior SSA claim. Plaintiff cannot seek to re-open her October 2006 claim in this Court, either in the first instance or upon appeal. She must first put such a request before the Commissioner, 20 C.F.R. § 404.987(a), and the Commissioner's decision whether to re-open such a claim is not reviewable. 20 C.F.R. § 404.987(a); *Culbertson v. Sec'y of Health & Human Servs.*, 859 F.2d 319, 322 (4th Cir. 1988) ("When deciding whether to reopen or to reconsider his own administrative determinations, the Secretary enjoys broad discretion, which is generally not subject to judicial review."); *Holloway v. Schweiker*, 724 F.2d 1102, 1104-05 (4th Cir. 1987).

6

*Eldridge*, 424 U.S. 319, 327 (1976).  As a general rule, "[r]efusal to review for failure to file a timely request is not a "final decision" reviewable under [Section] 405(g)]." *Dillow v. Sullivan*, 952 F.2d 1396 (Table Op.), 1992 WL 6810, at *1 (4th Cir. 1992); *Adams v. Heckler*, 799 F.2d 131, 133 (4th Cir. 1986) (refusal to consider untimely request for Appeals Council review is not reviewable by court); *Nelson v. Barnhart*, 2003 WL 24122717 (E.D. Va. Dec. 19, 2003) (applying *Adams* to untimely request for ALJ hearing); *Farrow v. Astrue*, 2012 WL 4925939 (E.D.N.C. Sept. 27, 2012) (refusal to find good cause for untimely request is not subject to judicial review).  This rule is in place because "permitting claimants to obtain judicial review of denials of their requests for extensions of time would frustrate Congress' intent to forestall belated litigation of stale claims." *Matlock v. Sullivan*, 908 F.2d 492, 494 (9th Cir. 1990).

An exception to this limit on the Court's jurisdiction exists where a Plaintiff raises a colorable constitutional claim. *Califano v. Sanders*, 430 U.S. 99, 109 (1977) (remarking upon the "well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed" under Section 405(g)); *Culbertson v. Sec'y of Health and Human Svcs.*, 859 F.2d 319, 322 (4th Cir. 1988) (allowing colorable constitutional claim exception to general rule that courts may not review a commissioner's decision not to re-open a claim).  But Plaintiff has not alleged that any constitutional violation occurred.  *See Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("[E]ven a *pro se* complainant must plead factual matter that permits the court to infer more than the mere possibility of misconduct.") (internal quotations omitted);  *accord White v. White*, 886 F.2d 721, 724 (4th Cir. 1989).  Plaintiff's initial request for a hearing was untimely, and the SSA found that she had not demonstrated good cause for that untimely filing. "The undersigned certainly sympathizes with Plaintiff's circumstances," but there is not "anything in this record that shows

7

plaintiff failed to receive all the process that was due." *Majors v. Astrue*, No. 3:08-cv-5, 2008 WL 2783524, at *3 (W.D. Va. Jul. 16, 2008).

In sum, nothing in the record before the court presents a colorable constitutional challenge to the SSA's action. *See Holloway v. Schweiker*, 724 F.2d 1102 (4th Cir. 1984) (rejecting due process claim where SSA did not find "good cause" to reopen prior claim, and holding that no constitutional violation existed where the "essence" of plaintiff's complaint was "no more than that the proper exercise of a valid statute of limitations has rendered time barred his otherwise meritorious claim"); *Nelson v. Barnhart*, No. Civ. A. 03-842-A, 2003 WL 24122717, at *3 (E.D.Va. Dec. 19, 2003) (finding that plaintiff failed to raise a colorable due process claim based on insufficient notice, where ALJ had found that plaintiff did not have good cause for an untimely hearing request). Absent a colorable constitutional challenge, this Court does not have the power to review the SSA's dismissal of Plaintiff's October 2006 application for benefits. Accordingly, to the extent that Plaintiff seeks a determination that the "October 6, 2006 application" be "still effective," it is RECOMMENDED THAT claim be dismissed as outside this Court's jurisdiction.

**B. Plaintiff's "Discrimination Complaint" Should Be Subsumed Into the Court's Review of the ALJ's 2011 Decision.**

Plaintiff's complaint also requests "court review of [her] discrimination complaint." DE-1 at 2. She attaches form SSA-437-BK, a Social Security Discrimination Complaint, alleging discrimination on the basis of disability.[7] *See* DE-1-1 at 1, 4. As an initial matter, from the

---

[7]  The date of signature on this form is identical to the date she filed this action in this Court. Accordingly, it appears that she filed this form in the first instance with this Court, and not with the Social Security Administration, as the form intends. *Id.* It is noted that the instructions to the form state: "If your complaint of discrimination concerns a decision that we made on a claim for benefits . . . and if the relief you are seeking is that the SSA change this decision, **YOU SHOULD NOT USE THIS FORM. You must appeal the decision according to the procedures and within the timeframes described in the notice of appeal rights you received with our decision. If you believe that your claim for benefits was decided because of discrimination, you must say this in the appeal, and include the facts on which you base this allegation.**" Form SSA-437-BK (available at

8

context of Plaintiff's court filings, it is not apparent whether Plaintiff is alleging that her benefits were denied because of discrimination, or whether she believes this form is standard practice for a federal lawsuit seeking review of denial of benefits. *See* DE-16 at 3 (stating that "Form SSA-437-Bk . . . is required to file with the federal court"). Plaintiff specifies on the form that she was filing the discrimination complaint "because benefits were not approved for disability insurance benefits," and seeks benefit payments as relief. DE-1-1 at 3-4. Moreover, the facts she alleges in support of her discrimination claim are that "September 6, 2005 [and] October 6, 2006 claims for disability insurance benefits on the diagnosis: degenerative disk disease were denied," that "the same diagnosis was approved in step #3 of the five step process," and that "the word rheumatoid was left off arthritis." DE 1-1 at 1. These mirror her objections to the ALJ's decision, and pertain to alleged errors in the ALJ and SSA's handling of her claim rather than allegations that she was treated differently than other claimants due to her disability.[8]

In an abundance of caution, however, the undersigned will treat Plaintiff's claim of discrimination as analogous to a claim of bias, which is within the scope of Section 405(g) review. *Carter v Astrue*, No. 2:11-cv-665, 2013 WL 1165172, at *6 (E.D. Va. Mar. 20, 2013) (citing *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). That is, "court review of discrimination complaint" will not be treated as an independent claim for relief, but will instead be subsumed into Plaintiff's request for review of the Commissioner's final decision denying benefits.[9]

---

http://www.ssa.gov/online/ssa-437.pdf) (emphasis in original). It may be the case that Plaintiff, by filing Form SSA-437-BK with her complaint instead of submitting it to the Social Security Administration, is attempting to follow these instructions.

[8] To the extent that these allegations pertain to her request for review of the Commissioner's decision, they are discussed in more detail below, during the analysis of that decision.

[9] If Plaintiff's request for review were considered an independent claim for relief, it is likely that this Court would be without jurisdiction to consider it. *Melvin v. Soc. Sec. Admin.*, No. 5:09-cv-235, 2010 WL 1958604, at *11 (E.D.N.C. Mar. 24, 2010). Case law discussing this issue is sparse. *See Wilson v. Astrue*, No. 1:11-cv-140, 2012

When alleging prejudice or bias, a plaintiff has a "heavy burden" of proof. *See Simpson v. Macon County, N.C.*, 132 F. Supp. 2d 407, 411 (W.D.N.C.2001)). The alleged bias must be evident from the record and not based on speculation or inference. *Hucks v. Colvin*, No. 2:12-cv-76, 2013 WL 1810658, at *7 (N.D. W. Va. Apr. 3, 2013) (citing *Navistar Int'l Trans. Corp. v. United States E.P.A.*, 941 F.2d 1339, 1360 (6th Cir. 1991)). Here, Plaintiff has cited no facts in support of her claim of discrimination, other than the fact that her claim was denied. *See Kilroy v. Maine*, No. 9-324-B-W, 2010 WL 145294, at *5 (D. Me. Jan 8, 2010) (finding that disability discrimination claim failed to state a claim upon which relief could be granted, "because the allegations in the complaint cannot show that claimant was treated differently because of his disability or that his particular disability was being treated in a discriminatory fashion"); *Trout v. Astrue*, No. 1:06-cv-1744, 2007 WL 4150320, at *3 (S.D. Ind. Oct. 19, 2007) (rejecting claim of discrimination based on disability in social security context because "Plaintiff's argument seems to be that he is being excluded from Title II disability insurance benefits because of his disability. The argument does not hold together."). The bare allegation that discrimination occurred does not suffice to establish that the SSA discriminated against Plaintiff because of her disability. *Carr v. Comm'r of Soc. Sec.*, No. 4:10-cv-25, 2011 WL 1811691, at *1 (W.D. Va. Mar. 7, 2011) (affirming ALJ's decision where Plaintiff argued, without support, that the ALJ's "decision to deny her claim for benefits was purely discriminatory"); *Ashby v. Astrue*, No. 08-327, 2009 WL 415275, at *7 n.15 (D. Minn. Feb. 18, 2009) (rejecting claim because plaintiff "failed to set forth any evidence, other than his own subjective beliefs, of any such discrimination"). In short, Plaintiff has failed to state any allegations in support of her argument that the SSA's action was discriminatory, and any argument in this regard is rejected.

---

WL 2449873, at *4 (W.D.N.C. May 23, 2012) (commenting that "Plaintiff has not presented the Court with a single case from any jurisdiction applying [a disability discrimination claim under the Rehabilitation Act, 29 U.S.C. § 794(a)] in the context of a social security appeal.").

## II.    **The 2011 ALJ Decision Applied the Correct Law and Was Supported By Substantial Evidence.**

This Court is authorized to review Defendant's denial of Plaintiff's 2010 claim for benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive….

42 U.S.C. § 405(g). "Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to reweigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even "[w]here conflicting evidence allows reasonable minds to differ," the Court must defer to the Commissioner's decision. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Finally, in reviewing the Commissioner's decision, the Court examines only "a closed administrative record [and] neither party may put any additional evidence before the district court." *Mathews v. Weber*, 423 U.S. 261, 270 (1976); *accord Smith*, 99 F.3d at 638 n.5 (4th Cir. 1996).

**A. Legal Standards.**

Title II of the Social Security Act provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability, as defined by the Act. 42 U.S.C. § 423(a)(1)(D). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. *Id.* § 1382(a). Both titles define "disability" as the "inability to engage in <u>any</u> substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." *Id.* §§ 423(d)(1)(A) & 1382c(a)(3)(A) (emphasis added). More specifically, an individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Accordingly, the Social Security Administration has promulgated the following regulations establishing a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b).[10] If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20

---

[10]  The five step analysis applies to both supplemental security income (Title XVI) and disability insurance benefits (Title II). *Compare* 20 C.F.R. Part 404 subpart P *with id.* Part 416 subpart I. For simplicity, only 20 C.F.R. Part 404, which governs disability insurance benefits, is cited herein.

> C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ followed the sequential evaluation in this case. First, the ALJ found that although Plaintiff engaged in substantial gainful activity after the alleged onset date, the issue was moot because he could make a substantive decision later in the process. Tr. 11. At step two, the ALJ found that Plaintiff had the following severe impairments: hypertension, arthritis, degenerative disc disease, and obesity. *Id.* The ALJ then determined that Plaintiff did not have an impairment that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 12. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")[11] to perform sedentary work, with some postural and manipulative limitations. *Id.* Specifically, the ALJ found that Plaintiff could:

> perform sedentary work ... [and] can sit for up to 6 hours in an 8-hour day. She can stand/walk for 2-4 hours in an 8-hour day with frequent breaks. She might need to use an assistive device for prolonged ambulation on occasion. She can lift 10 pounds occasionally and can frequently lift and carry articles like docket files, ledgers, and small tools. She is able to perform tasks requiring bending, stooping, and crouching frequently. She is also able to perform tasks involving reaching out, grasping, and fingering frequently.

*Id.* The ALJ then found that Plaintiff was capable of performing her past relevant work as an administrative worker. *Id.* at 16. Accordingly, the ALJ determined that Plaintiff had not been under a disability during the relevant time period. *Id.* at 22.

---

[11] An individual's RFC is what that person can still do despite physical and mental impairments. 20 C.F.R. § 404.1545(a).

Plaintiff raises several assignments of error.[12] Plaintiff's fourth and sixth objections relate to the argument that that her diagnosis of degenerative disc disease confirms that she meets Listing 1.04, and that her other diagnoses automatically dictate the finding that she is disabled. DE-1 at 9-10. In her first and second objections, Plaintiff contends that two of the ALJ's factual findings during his RFC assessment were incorrect. *Id.* at 9. Plaintiff argues in her seventh objection that because the ALJ found that her impairments were severe, she should be presumptively disabled.[13] *Id.* at 10. Finally, Plaintiff's third and fifth objections involve purported discrepancies found in documents relating to her 2006 claim for benefits. These objections and supporting arguments are addressed in turn below, following a brief summary of the relevant medical evidence.

### B. Medical Evidence.

In Plaintiff's concurrent applications, she listed her impairments as skin disorder, degenerative disc disease, "left leg blood vessels," and angina.[14] Tr. 22, 33. Plaintiff has been periodically followed for hypertension and receives medication for this condition. *E.g.*, Tr. 281, 293-94. In addition, Plaintiff was diagnosed with degenerative disc disease at the C5/C6 and C6/C7 vertebrae following a 1999 motor vehicle accident. Tr. 220, 312. In recent years, she has sought treatment for back and leg pain, including knee pain. On November 30, 2006, Plaintiff visited Dr. Reinke at Cary Orthopaedic and presented with multiple complaints. Tr. 233, 221.

---

[12] Defendant contends that Ms. Barnes does not allege any errors in the ALJ's determination, DE-20 at 5, which is inaccurate. Ms. Barnes identifies several "discrepancies," including contentions that medical evidence is at odds with the ALJ's decision and that the law favors her position. *See* DE-1 at 9-10. These objections appear in her complaint (DE-1), rather than in her motion for judgment on the pleadings (DE-17). Nonetheless, taking into account Plaintiff's *pro se* status, the Court will consider her arguments as though she raised them in her motion.

[13] Plaintiff also seems to contend in her complaint and other filings that this finding of severity means that her unsuccessful October 2006 claim for benefits should be "effective." As discussed above, this Court is without jurisdiction to consider her October 2006 claim.

[14] Plaintiff's 2006 application for benefits claimed the following impairments: "skin disorder, vitiligo, degenerative disc disease, and left leg blood vessels." Tr. 319.

Her most significant complaint was pain in both legs, and she also noted numbness and tingling below her knees. Tr. 233. She also described swelling in her lower extremities and achy pain, including pain in both knees. *Id.* Plaintiff told Dr. Reinke that sitting down alleviated her discomfort. *Id.* Upon examination, Dr. Reinke noted that there were fatty deposits around the knees and ankles, and tenderness along the leg. *Id.* He commented that there was "varus alignment of both knees" and that crepitation (i.e., popping sounds)[15] occurred upon moving the knees. *Id.* He also noted that McMurray's test and a straight leg raise were negative, and that there were no motor deficits. *Id.* Dr. Reinke reviewed X-rays of both knees and concluded that Plaintiff had "very mild arthritis" in her left knee, with "no other significant findings." *Id.* Based on this exam, Dr. Reinke informed Plainitff that "her arthritis in her knees did not appear significant enough to account for the pain she is feeling." Tr. 233. Because Plaintiff was concerned about numbness, Dr. Reinke referred her to Raleigh Neurology for further evaluation and diagnoses, because numbness "may be indicative of spinal stenosis or radicular symptoms." *Id.*

Plaintiff therefore saw Dr. Yerramsetty at Raleigh Neurology associates on December 14, 2006. Tr. 239-240. She reported arthralgias[16] and back pain. Tr. 239. Upon examination, Plaintiff's gait was normal, as were her extremity strength and tone. Tr. 240. She had tenderness in her joints, neck, and low back. *Id.* Dr. Yerramsetty considered that her pain could be caused by either polymyalgia rheumatica[17] or "systemic metabolic reasons such as hypothyroidism or

---

[15] Varus alignment indicates that a patient is bow-legged. STEDMAN'S MEDICAL DICTIONARY, 431950 (27th ed. 2000) (noting that modern orthopedic usage means bent outward or bowlegged). Crepitus is "a palpable or audible grinding." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 285 (Robert S. Porter *et al*. eds., 19th ed. 2011).

[16] Joint pain. STEDMAN'S at 33020.

[17] "Polymyalgia rheumatica is a syndrome closely associated with giant cell (temporal) arthritis. . . . It typically causes severe pain and stiffness in proximal muscles." MERCK MANUAL at 325.

B12 deficiency, et cetera," so he recommended blood testing and a consult with a rheumatologist, and placed Plaintiff on prednisone for pain relief. *Id.*

Plaintiff returned to Dr. Yerramsetty for a follow up appointment on February 1, 2007. Tr. 236. He noted that her blood work indicated a "slightly borderline elevation of rheumatoid factor at 16.0,"[18] and that predisone did not "make a big difference" in Plaintiff's symptoms. *Id.*; *see also* Tr. 242. In his assessment, Dr. Yerramsetty concluded that he "[did] not believe her symptoms were neurological," and recommended that she consult with a rheumatologist and consider steroid use for pain.[19] *Id.* Dr. Yeramsetty also noted that Plaintiff's mildly elevated creatine phosphokinase test was "not worrisome" because it "may be seen in polymyalgia rheumatica." *Id.* Finally, he noted that he gave Plaintiff Darvocet for pain and that she would follow up with him "on an as needed basis." *Id.*

Plaintiff was incarcerated from 2007 through early 2010 and consequently did not see a rheumatologist until she complained of joint and back pain within the Department of Corrections ("DOC"). *See* Tr. 251. On November 7, 2008, a DOC doctor noted a diagnosis of "polyarthralgias" and commented that Plaintiff "does not have clinical evidence of RA."[20] Tr. 275. The doctor ordered lab work and an x-ray. *Id.* The x-ray showed the degenerative changes

---

[18]  Rheumatoid factors ("RF") are antibodies that are present in about 70 percent of patients with rheumatoid arthritis, but an elevated RF may also be present in patients with other diseases, including polymyalgia rheumatica. MERCK MANUAL at 333 & 326. Plaintiff's later blood work, dated February 12, 2009, showed a rheumatoid factor of 14.0, barely over the "limits" shown on the lab report. Tr. 259.

[19]  The summary chart detailing Plaintiff's visit lists her diagnoses as "unspecified myalgia and myositis" and "lumbago." Tr. 222. Lumbago is "a descriptive term not specifying cause" generally meaning "pain in mid and lower back." STEDMAN'S at 23310.

[20]  "Polyarthralgias" means multiple "arthralgias," i.e., pain in multiple joints. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1487 (32nd ed. 2012). "RA" is a common abbreviation for rheumatoid arthritis. MERCK MANUAL at 332.

16

(as previously diagnosed) at the C5, 6, and 7 vertebrae "with anterior osteophytes"[21] and "narrowing of the C6-C7 and C7-T1 interspaces," with "no other abnormalities" noted. Tr. 267.

Plaintiff visited UNC Rheumatology on January 26, 2009, and reported pain in her joints and numbness in her legs. Tr. 272-74. She told the doctor that she took Naproxen for her joint pain. Tr. 272. Upon examination, the doctor noted a decreased range of motion in Plaintiff's neck, but normal range of motion in her shoulders. Tr. 273. The doctor noted no synovitis or joint effusion. *Id.* Plaintiff's muscle strength was 5/5 in all extremities. Tr. 274. The assessment was degenerative disc disease, with "some evidence of radiculopathy[22] in her lower extremity," as well as "generalized nonspecific musculoskeletal pain." *Id.* As such, the doctor recommended a follow up regarding "the *possibility* of radiculopathy," along with physical therapy, medication, and cognitive behavioral therapy. *Id.* (emphasis added). Additional handwritten notes from the clinic dated July 7, 2009 state: "patient doing alright per chart review. Will await vit[amin] D deficiency connection." *Id.*

A subsequent x-ray of plaintiff's sacroiliac joint on February 20, 2009 revealed "some evidence for mild sacroiliitis" on the left, as well as "sclerosis[23] around the sacroiliac joint." Tr. 263; *see also id.* at 280. The reviewing physician noted that joint space was "still preserved." Tr. 263. She was prescribed vitamin D and Oscal. Tr. 280.

The remaining medical records in the administrative transcript involve routine medical care such as medication refills and treatment for hiccups and sinus infections. *E.g.*, Tr. 283-84. Indeed, Plaintiff's 2010 appointments with Dr. Bookert involved congestion or sinus problems

---

[21]  A bony outgrowth or protuberance. STEDMAN'S at 289250.

[22]  Disorder of the spinal nerve roots. STEDMAN'S at 347610.

[23]  "Sacroiliitis" is inflammation of the sacroiliac joint. STEDMAN'S at 361820. "Sclerosis" is the hardening of nervous structures caused by an increase in the number of normal cells in a tissue. *Id.* at 367270, 202580, 193090, 207300, 272120, & 148950.

rather than polyarthralgias. Tr. 292-94. Her April 2010 appointment noted that her current medications were a beta blocker and calcium channel blocker for hypertension, along with vitamin D and Calcium. Tr. 294. No pain medication was noted.

### 1. Consultative Examinations.

Dr. Fernandez has thrice examined Plaintiff on behalf of the North Carolina Department of Disability Services. *See* Tr. 225-27, 229-32, 299-302. During Plaintiff's September 26, 2005 examination, her chief complaint was vitiligo, and Dr. Fernandez noted no limitations. Tr. 225-27. In November 2006, Plaintiff returned for another consultative examination, this time with a chief complaint of degenerative disc disease. Tr. 229-232. Dr. Fernandez concluded that Plaintiff could stand and walk 2-4 hours with frequent breaks, and could sit four hours— "possibly longer"—with normal to frequent breaks. Tr. 232. He noted unspecified postural and manipulative limitations due to Plaintiff's neck and knee pain. *Id.*

Plaintiff saw Dr. Fernandez for another consultative exam in July 2010. Tr. 299-302. Dr. Fernandez noted Plaintiff's prior degenerative disc disease diagnosis, and observed that Plaintiff reported that she had not ever had an MRI of her neck or any physical therapy, and was not on injections for pain. Tr. 299. Dr. Fernandez discussed Plaintiff's visits to Raleigh Orthopedics and Dr. Yamsetty (the neurologist), and noted that Dr. Yamsetty did not recommend surgery. *Id.* Plaintiff told Dr. Fernandez that she had neck, knee, back, hip, and other joint pain. Tr. 300. She reported using a crutch prescribed in 2006 after her "hip got jammed."[24] *Id.* Dr. Fernandez noted that Plaintiff had not had injections or physical therapy for the knee pain. *Id.* Plaintiff told Dr. Fernandez that she could perform the following activities: walk 25 feet, stand 15 minutes, pick

---

[24] The only relevant medical record within the administrative materials is dated June 10, 1990. Tr. 315. Plaintiff had an unspecified accident causing "injury to hip," Tr. 316, and was told to "avoid walking but if have to use cane." Tr. 315. Plaintiff's DOC records also indicate that she reported using a crutch on her health screening form. *See* Tr. 249.

up less than 5 pounds, use the bathroom, shower, dress, feed herself, button her clothes, turn a doorknob, cook and do dishes (as long as she could sit down), make her bed, do laundry, and shop. *Id.* Plaintiff also reported that she would occasionally vacuum, mop, and sweep, but had to take breaks frequently, and that she did not do yard work. *Id.* She stated that she had difficulty writing with a pen, and sometimes had difficulty picking up coins, pens, and keys. *Id.* At the time of the examination, her medications were Tylenol, vitamin D and calcium, dulcolax, and nifedical (for hypertension). *Id.* Plaintiff was able to walk down the hall with the assistance of a crutch, had fairly normal gait, and was in no acute distress. Tr. 301. She was able to move around the examination room without the crutch. *Id.* She had no cyanosis, cords, or pedal edema of ankles. *Id.* Plaintiff's motor strength was either 5/5 or -5/5 for her extremities. Tr. 302. "Without her crutch, she had difficulty and was able to tandem walk for just a few steps. She could not walk on her heels. She walked for a few steps on her tiptoes, but had difficulty." *Id.* Plaintiff had a full range of motion in her upper extremities, though her neck extension was 0 to 50 degrees. *Id.* In sum, Dr. Fernandez concluded that plaintiff "should be able to stand and walk 2-4 hours with frequent breaks assisted by her crutch and sit four to six hours with frequent breaks. There are postural limitations of bending, stooping, and crouching frequently limited by her back and knee pain. There are manipulative limitations of reaching out, seeing, grasping, or fingering limited by her upper extremity pain." *Id.*

In addition, as the ALJ noted in his decision, Plaintiff's Department of Corrections medical chart states that in December 2008, she was restricted to lifting no more than five pounds, no stooping, no working in a cramped position, no standing more than 15 minutes at a time, and was assigned to a bottom bunk, to continue for one year. Tr. 282.

## C. Substantial Evidence Supports the ALJ's Findings that Plaintiff's Impairments Did Not Meet Or Medically Equal any Listing.

In her fourth and sixth objections, Plaintiff contends that her degenerative disc disease and other impairments are sufficiently severe to meet the Listings. See DE-1 at 9-10. Plaintiff's contentions rely upon a misapprehension of the applicable legal standards, and are without merit.

The "Listing of Impairments" details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 404.1525(a). If a claimant's impairments meet all the criteria of a particular listing, 20 C.F.R. § 404.1525(c)(3), or are medically equivalent to a listing, Id. § 404.1526, this alone establishes that the claimant is disabled. Id. § 404.1520(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' " *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990), *superseded by statute on other grounds*; *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (stating that the listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); see also Hancock v. Astrue, 667 F.3d 470, 476 (4th Cir. 2012). As such, a claimant must present medical findings equal in severity to all the criteria[25] for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530-31;

---

[25] Alternatively, a claimant may show that an unlisted impairment, or combination of impairments is medically equivalent to a listed impairment, but she must likewise present medical findings equal in severity to all of the criteria for the most similar impairment. 20 C.F.R. § 404.1526(a).

*see also* 20 C.F.R. § 404.1525(c)(3).

Plaintiff relies in part upon a SSA publication describing the Listings, which states that: "The state agency has a List of Impairments that describes medical conditions that are considered so severe that the automatically mean that you are disabled as defined by law." DE-1 at 10; *see also* SSA Pub. No. 05-10029, ICN 456000. This publication "provides basic information . . . and is not intended to answer all questions." *Id.* at 4. It is published by the SSA as an overview of the disability evaluation process, and does not supplant governing law.[26] The law, as embodied in the regulations, provides:

> Can your impairment(s) meet a listing based only on a diagnosis?
> No. Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing.

20 C.F.R. § 404.1525(d); *see also McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011) ("Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing."); *see also Tucker v. Astrue*, 897 F. Supp. 2d 448, 470-71 (S.D. W.Va. 2012); Mecimore v. Astrue, No. 5:10-CV-64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

---

[26] It is also noted that such a publication has no independent legal force. *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) ("The [SSA] Claims Manual [i.e., similar document] is not a regulation. It has no legal force, and it does not bind the SSA."); *Batterton v. Marshall*, 648 F.2d 694, 701-02 (D.C. Cir. 1980) ("Non-binding action, in contrast, merely expresses an agency's interpretation, policy, or internal practice or procedure. Such actions or statements are not determinative of issues or rights addressed. They express the agency's intended course of action, its tentative view of the meaning of a particular statutory term, or internal house-keeping measures organizing agency activities. They do not, however, foreclose alternate courses of action or conclusively affect rights of private parties."); *accord Sigram Schindler Beteiligungsgesellschaft MBH v. Kappos*, 675 F. Supp. 2d 629, 639 (E.D. Va. 2009).

Thus, Plaintiff's sixth objection, *see* DE-1 at 10, is without merit. The fact that Plaintiff has been diagnosed with degenerative disc disease (or any other impairment)[27] does not mean that Plaintiff meets the listing for that impairment. The fact of diagnosis "says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *accord Aytch v. Astrue*, 686 F. Supp. 2d 590 (E.D.N.C. 2010). Thus, the relevant question before the ALJ was not whether Plaintiff had been diagnosed with degenerative disc disease but rather whether Plaintiff presented medical findings equal in severity to all the criteria for that listing, Listing 1.04. The relevant portion of Listing 1.04 provides:

> Disorders of the spine (e.g., . . . degenerative disc disease . . .), resulting in compromise of a nerve root . . . or the spinal cord. With: . . . Lumbar spinal stenosis [1] resulting in pseudoclaudication, [2] established by findings on appropriate medically acceptable imaging, [3] manifested by chronic nonradicular pain and weakness, <u>and</u> [4] resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, subpart P, App. I, § 1.04 (emphasis added). Contrary to Plaintiff's fourth objection, DE-1 at 9, the ALJ did not err in finding that these criteria were not established in Plaintiff's medical records. The only reference to stenosis in Plaintiff's medical records is Cary Orthopedics' suggestion that plaintiff's concern regarding numbness "*may* be indicative of spinal stenosis *or* radicular symptoms." Tr. 233 (emphasis added). But Plaintiff's neurological provider concluded that her symptoms were not neurological,[28] Tr. 242, and no other evidence in the

---

[27] Plaintiff also contends that she has been diagnosed with rheumatoid arthritis and "sclerosis." As discussed in more detail below, nothing in the administrative record indicates that Plaintiff has been diagnosed with rheumatoid arthritis. In addition, "sclerosis" is not a disease in and of itself but rather, as noted above, refers to hardening of nervous structures caused by an increase in the number of normal cells in a tissue. *See, e.g.*, Tr. 263 (reviewing results of 2009 x-ray and commenting upon "sclerosis around the sacroiliac joint").

[28] A disorder "resulting in compromise of a nerve root . . . or the spinal cord" would, by definition, be neurological. *See* DORLAND'S at 1266 (defining neurologic as "dealing with the nervous system").

records suggests that Plaintiff meets the criteria within Listing 1.04.[29]  Moreover, as the ALJ

found with respect to Listing 1.02A, and consistent with Plaintiff's reports to the consultative

examiner, Plaintiff's impairments have not resulted in an "inability to ambulate effectively as

defined in 1.00B2b." *See* Tr. 12. Listing 1.00B2b(1) defines an inability to ambulate effectively

as "having insufficient lower extremity functioning . . . to permit independent ambulation

without the use of a hand-held assistive device(s) that limits the functioning of *both* upper

extremities." *Id.*[30] (emphasis added).  Plaintiff's self-reported use of her crutch involves only one

upper extremity, and she informed the consultative examiner that she was able to do some

housework with breaks. Tr. 299-302.  Such activities are not consistent with an "extreme

limitation of the ability to walk" as required by Listing 1.00B2b(1).  In sum, substantial evidence

supports the ALJ's conclusion that Plaintiff does not have an impairment that meets or medically

equals one of the listed impairments, and Plaintiff's fourth and sixth assignments of error are

unsupported.

### D.  Substantial Evidence Supports the ALJ's RFC Determination.

In her first and second objections, Plaintiff disputes certain factual findings within the

ALJ's RFC assessment. DE-1 at 9.  Plaintiff argues in her second objection that the ALJ's

statement that "blood testing was not definitive for rheumatoid arthritis" was incorrect. DE-1 at

9.  In support of her position, she cites the December 16, 2006 blood test performed upon orders

---

[29]  Plaintiff also cites her "negative straight leg raise" test in support of her argument.  A straight leg raise is used to assess whether a patient has a herniated disc, and a negative result is favorable.  *See, e.g.*, Gregory *et al.*, *Acute Lumbar Disk Pain: Navigating Evaluation and Treatment Choices*, 78(7) Am. Fam. Physician 835, *available at* http://www.aafp.org/afp/2008/1001/p835.html#afp20081001p835- b4 (last visited 11/4/13) ("Although not specific, the straight-leg-raise test is the most sensitive test for lumbar disk herniation, with a negative result strongly indicating against lumbar disk herniation.").

[30]  "[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* § 1.00B2b(2).

by Raleigh Neurology Associates. *See* Tr. 242. In interpreting these findings, however, Dr. Yerramsetty indicated that Plaintiff had only a "slightly borderline elevation of rheumatoid factor," at 16.0H IU/mL. Tr. 236 In addition, later blood testing showed a rheumatoid factor at 14.0, with a listed range of 0.0-13.9. Tr. 259. More importantly, nothing in the record indicates that Plaintiff was diagnosed with rheumatoid arthritis as a result of this blood test. Rather, Dr. Yerramsetty opined that because "polymyalgia rheumatica" was "in the differential"— i.e., was a possible diagnosis—Plaintiff "ought to be seen by a rheumatologist." Tr. 240; *see also id.* at 236. Polymyalgia rheumatica is not the same condition as rheumatoid arthritis. *Compare* Merck Manual at 332 (defining rheumatoid arthritis as "a chronic systemic autoimmune disease") *with id.* at 325 ( defining polymyalgia rheumatica as a syndrome causing "severe pain and stiffness in proximal muscles"). And when Plaintiff did see a rheumatologist for her joint pain, Tr. 272-74, the referring DOC physician noted that there was no "clinical evidence of RA." Tr. 275. In sum, substantial evidence supports the ALJ's conclusion that the blood testing "was not definitive for rheumatoid arthritis," and Plaintiff's second objection is without merit.

Plaintiff's first objection, however, has more support in the record. Plaintiff contends that the ALJ's statement that "she does not have any joint deformity" was in error. DE-1 at 9. In support of this argument, Plaintiff cites her November 30, 2006 medical record from Cary Orthopedics, which noted that Plaintiff had "varus alignment of both knees." As noted above, a "varus" alignment indicates that the knees flex outward. Plaintiff thus is correct that technically speaking, the definition of varus alignment is coextensive with a varus "deformity." *See, e.g.*, Krackow, The Measurement and Analysis of Axial Deformity at the Knee, at 1-2 (Homer Stryker Center publication, 2008), *available at* http://www.uortho.buffalo.edu/axialdeformity.pdf; Stedman's at 104530 (defining deformity as "[a] permanent structural deviation from the

normal shape, size, or alignment, resulting in disfigurement").  Nonetheless, for the reasons

explained below, the ALJ's misstatement was harmless error.

### 1. Harmless Error.

"Errors are harmless in social security cases when it is inconceivable that a different

administrative conclusion would have been reached absent the error." *Austin v. Astrue*, No. 7:06-

cv-622, 2007 WL 3070601, at *6 (W.D. Va. 2007) (citing *Camp v. Massanari*, 22 F. App'x 311

(4th Cir. 2001)).  Here, it is inconceivable that the ALJ would have reached a different conclusion

even had he correctly noted that varus alignment constitutes a "deformity."  First, the ALJ

concluded that Plaintiff could only perform sedentary work, with additional limitations.  Tr. 12.

Sedentary work requires only "occasional" standing and walking. 20 C.F.R. § 404.1567(a); Soc.

Sec. Rul. 83-10, 1983 WL 31251 (1983). Even though the ALJ concluded that Plaintiff was able

to perform stooping and crouching "frequently" – i.e., between one-third and two-thirds of the

work day – sedentary work by "its very nature . . . entails no significant stooping," *id.*, and

crouching is "not usually required in sedentary work." Soc. Sec. Rul. 96-9p, 1996 WL 374185

(Jul. 2, 1996).  The ALJ took the medical evidence in the record into account in crafting the

RFC, including Plaintiff's arthritis and knee pain.  Accordingly, he incorporated Plaintiff's need

to use an assistive device for prolonged ambulation, along with her need for "frequent breaks" if

standing or walking.  Tr. 12.  This RFC determination is consistent with Dr. Fernandez's

consultative examination report and Plaintiff's description of her own abilities: she stated that

she was able to perform housework with breaks and was able to care for herself and shop, and

Dr. Fernandez noted that she was able to move around the examination room without her crutch.

Tr. 300-301. In light of the consultative examination findings, it is inconceivable that the ALJ

would have reached a different decision even had he correctly described Plaintiff's varus knee

alignment as a "deformity." Accordingly, the ALJ's RFC determination was supported by substantial evidence, and his misstatement regarding joint deformity was harmless error. *See Glaser v. Astrue*, No. 2:11-cv-213, 2013 WL 1332064, at *13 (E.D. Va. Mar. 29, 2013) (finding that the ALJ's decision was supported by substantial evidence even "after discounting any misstatements" made by the ALJ); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 83 n.26 (N.D.N.Y. 2005) (finding that an ALJ's misstatement of the record regarding claimant's ability to do household chores was harmless error where his credibility assessment was "amply supported by other substantial evidence").

In short, the ALJ conducted a thorough summary of the entire medical record and his RFC findings were supported by citations to that record. The undersigned finds no reversible error in the ALJ's assessment and consideration of Plaintiff's credibility or functional limitations. The records in this case provide "more than a scintilla of evidence," *Laws*, 368 F.2d at 642, in support of the ALJ's finding that Plaintiff retained the residual functional capacity to perform sedentary work. Accordingly, Plaintiff's assignments of error as to the ALJ's RFC determination are without merit.

### E.  The Step-Two Severity Analysis is Not Determinative of the Step-Three Listings Analysis.

Plaintiff's seventh objection arises from the ALJ's conclusion that she had certain severe impairments.[31] *See* DE-1 at 10.  Plaintiff's objection confuses the second step of the sequential analysis—severity—with the third step, whether an impairment meets or medically equals one of the Listings.  The ALJ found that Plaintiff's hypertension, arthritis, degenerative disc disease, and obesity were "severe" as defined by the regulations. Tr. 11.  But "severe," as used in the social security determination process, does not mean "disabled"; it merely means more than "a

---

[31]  Though Plaintiff categorizes this as "Step 3," the severity determination is actually step 2; the ALJ merely listed his conclusion as paragraph three in his decision. *See* DE-1 at 10.

slight abnormality." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). Thus, the severity standard is "a low bar," *Gardner v. Astrue*, 257 F. App'x 28, 29 (9th Cir. 2007), and a finding that a claimant has severe impairments does not mean that those impairments either meet a Listing or otherwise establish disability. *See Freels v. Astrue*, 772 F. Supp. 2d 608, 624 (D. Del. 2011) ("A finding of severe impairment alone does not mean that a plaintiff is disabled."). As such, Plaintiff's seventh objection is unfounded.

Plaintiff's confusion of step two and step three permeates other portions of her claim as well. She repeatedly states that her claim was "approved in Step 3," s*ee, e.g.*, DE-1 at 5, and argues in her pending motion that the degenerative disc disease diagnosis was "approved in Step #3 on February 24, 2011." DE-17 at 3; *see also* DE-1 at 7. Her request for Appeals Council review likewise states that the ALJ's February 24 decision "changed the condition from chronic to severe." Tr. 5. It appears from Plaintiff's filings that this misconception has led to her belief that her October 2006 application should be "still effective." *See e.g.*, DE-17 at 3; DE-1 at 2. Insofar as this argument is predicated on her most recent application being "approved"—which it was not—this argument fails. Moreover, as discussed in detail above, to the extent that this argument seeks the Court's intervention with respect to the October 2006 application, it seeks relief outside this Court's jurisdiction.

### F. This Court is Without Jurisdiction to Review any SSA Finding Relating to Claims Pre-Dating Plaintiff's 2010 Claim for Benefits.

Finally, Plaintiff's third and fifth objections involve purported discrepancies in documents the SSA produced in January and March of 2007. *See* DE-1 at 9-10. Plaintiff's third objection appears to reference a prior SSA reconsideration determination from 2007, *see* DE-1 at 9, but Plaintiff's precise objection is unclear. Moreover, this document does not appear in the administrative record before the Court. Plaintiff's fifth objection pertains not to any error made

by this ALJ but rather complains of the shorthand used by Gilbert Whitmer—"ddd c56"— in summarizing the impairments Plaintiff claimed on her application for benefits. *See* Tr. 319. These objections are beyond the scope of this Court's review. As discussed in detail above, this Court's analysis is limited to determining whether Defendant's February 24, 2011 finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see* 42 U.S.C. § 405(g). SSA findings with respect to Plaintiff's prior claim for benefits have no bearing on either of those inquiries. As such, Plaintiff's third and fifth objections are overruled.

In sum, Plaintiff's arguments involving the record properly before the Court either misapprehend the law or rely upon the contention that the ALJ incorrectly weighed the evidence before him. *See Mecimore v. Astrue*, No. 5:10-cv-64, 2010 WL 7281096, at *6 (W.D.N.C. Dec. 10, 2010) ("Plaintiff has failed to point to any affirmative evidence of limitations beyond those found by the ALJ."). Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. *Craig*, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her claims are without merit. The ALJ applied the correct law, and his findings were supported by substantial evidence.

## **CONCLUSION**

For the aforementioned reasons, it is RECOMMENDED that:

(1)     Any claims against Defendants other than Acting Commissioner Colvin be DISMISSED;

(2)     To the extent that Plaintiff seeks to appeal the SSA's dismissal of her October 2006

application for benefits, that claim be DISMISSED as outside this Court's jurisdiction;

(3)     Plaintiff's Motion for Judgment on the Pleadings (DE-17) be DENIED;

(4)     Defendant's Motion for Judgment on the Pleadings (DE-19) be GRANTED; and

(5)     The final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Wednesday, November 13, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE